9 F.3d 109
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James BALENTINE, Defendant-Appellant.
 No. 92-2048.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before MILBURN, RYAN and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant James Balentine, who pled guilty to possession of an unregistered explosive device in violation of 26 U.S.C. Sec. 5861(d), appeals the sentence imposed. On appeal, the issue presented is whether the district court erred in applying a 12 level increase to defendant's total offense level pursuant to United States Sentencing Guidelines ("U.S.S.G.") Sec. 2K1.4(b)(3). For the reasons that follow, we vacate the sentence and remand for resentencing.
 
 I.
 
 2
 A grand jury in the Eastern District of Michigan returned an indictment against defendant James Balentine on November 12, 1991, charging him with possession of an unregistered explosive device in violation of 26 U.S.C. Sec. 5861(d). On April 10, 1992, defendant pled guilty without the benefit of a Rule 11 plea agreement. Thereafter, the probation department filed a presentence investigation report, and defendant filed objections to the report on June 19, 1992. At the sentencing hearing on July 30, 1992, the district court adopted the findings of fact and sentencing recommendation of the probation department's presentence report.
 
 
 3
 The presentence report states that in the fall of 1989, defendant performed repair work on a vacant house in Taylor, Michigan, owned by Russell and Jessie Rogers. Upon completion of the work, the Rogerses claimed they did not have a contract with defendant and refused to pay him. Frustrated by the Rogerses' refusal, defendant discussed his problem with Michael Housey[1] at a local bar. Defendant claimed that, at Housey's suggestion, they decided to explode a smoke bomb at the Rogerses' vacant house in retaliation for the Rogerses' refusal to pay defendant. Defendant and Housey left the bar and drove in Housey's car to defendant's residence where defendant picked up a device resembling a bowling ball wrapped in electrical tape with a green fuse protruding from it. They then drove to an alley behind the vacant house that defendant had repaired. Defendant got out of the car and placed the device between the vacant house and an abandoned vehicle, which was parked between the vacant house and the next-door neighbor's house. The defendant lit the fuse and returned to the vehicle, where he and Housey watched the detonation cause an eruptive noise and a mushroom cloud of smoke.
 
 
 4
 No person was physically injured by the explosion, but it did cause structural damage to both the vacant house and the next-door neighbor's house. In addition, the next-door neighbor, Helen Mazur, an elderly lady who lived alone, was awakened by the sound of the explosion and was reportedly horrified and traumatized by the incident. Both the Rogerses and Mrs. Mazur carried Allstate Insurance on their houses and were each subject to a $250.00 deductible in respect to their claims. Allstate paid $9,275.02 for the content and structure damage to Mrs. Mazur's home and $3,134.48 for the structure damage to the Rogerses' house. Defendant expressed remorse for his actions and told the probation department that he did not intend to harm anyone.
 
 
 5
 In the presentence report, the probation department determined that the total offense level was 16.[2] U.S.S.G. Sec. 2K2.2 (Receipt, Possession, or Transportation of Firearms and Other Weapons in Violation of National Firearm Act)[3] is the guideline applicable to violations of 26 U.S.C. Sec. 5861(d), and provides for a base offense level of 12. However, the cross-reference to that guideline directs: "If the defendant used the firearm in committing or attempting another offense, apply the guideline in respect to such other offense, or section 2X1.1 (attempt or conspiracy) if the resulting offense level is higher than that determined above." U.S.S.G. Sec. 2K2.2(c)(1) (emphasis added). Pursuant to this cross-reference, the probation department determined that the proper sentencing guideline for defendant's conduct was Sec. 2K1.4 (Arson; Property Damage by Use of Explosives),[4] which provides for a base offense level of 6. That guideline requires that the offense level be increased by 12 levels, "[i]f the offense involved destruction or attempted destruction of a residence." U.S.S.G. Sec. 2K1.4(b)(3). The probation department concluded that in this case the offense level should be increased by 12 because an occupied dwelling as well as an unoccupied residence incurred damage. J.A. 22, 25. Since this resulted in an offense level of 18, a higher level than that imposed by Sec. 2K2.2, the offense level of 18 was used. See U.S.S.G. Sec. 2K2.2(c)(1). After defendant's offense level was reduced by 2 for acceptance of responsibility, he had a total offense level of 16. Based on the total offense level of 16 and a criminal history category of I, the guidelines' imprisonment range was 21 to 27 months.
 
 
 6
 In his objections to the presentence report, defendant objected to the use of Sec. 2K1.4 against him and to the characterization of the bomb as a "destructive device." Defendant argued that the device was only a smoke bomb that caused smoke and noise damage to the unoccupied vehicle, that the damage to the occupied house was only to one window, and that he did not intend to destroy the home. At the sentencing hearing on July 30, 1992, the government argued that Sec. 2K1.4(b)(2), which calls for a 14 level increase if the defendant recklessly endangered the safety of another, was the appropriate offense characteristic. After admitting that defendant's actions were retaliatory, counsel for defendant argued:
 
 
 7
 Now what happened was, that he didn't think about what was on the left, only what was on the right. And on the left was another home where this woman was, with the house, the, the windows were blown out of the house. And the damage that the insurance company indicates occurred was damage, and I have talked to the insurance company, was smoke damage.
 
 
 8
 * * *
 
 
 9
 ... The guidelines originally placed in this particular offense indicate, there's two levels that you can have chosen. And the level is, number one, you could have a six, level six under 2K1.4, and there can be an addition, umm, under number five. It's very vague. If a defendant endangered the safety of another person, increase by four levels.
 
 
 10
 * * *
 
 
 11
 Today they're coming in and saying it's recklessly endangered somebody else. It wasn't recklessly endangering someone else. And it wasn't, in fact, a dwelling house. It was an unoccupied building. Unfortunately for the defendant, next door was a house where there was someone and he didn't think about that. That's not recklessly endangering. He didn't know the capacity of the particular item which they refer to as a incendiary device, nor did he really know it was this level.
 
 
 12
 J.A. 44-47.
 
 
 13
 The district court decided to follow the recommendation of the probation department to apply U.S.S.G. Sec. 2K1.4(b)(3) and sentenced defendant to 21 months in prison, followed by three years of supervised release, and restitution to Allstate Insurance Company for $12,409.50 and Helen Mazur for $250.00. This timely appeal followed.
 
 II.
 
 14
 Our review of the sentencing decision is governed by 18 U.S.C. Sec. 3742, which provides:
 
 
 15
 The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 16
 Thus, we review findings of fact at the sentencing hearing under a clearly erroneous standard, e.g., United States v. Cross, 900 F.2d 66, 70 (6th Cir.1990), but our review of the interpretation of the guidelines is de novo. United States v. Gresser, 935 F.2d 96, 100 (6th Cir.), cert. denied, 112 S.Ct. 239 (1991). The government must prove, by a preponderance of the evidence, those facts the court should rely on in determining the sentence. United States v. Carroll, 893 F.2d 1502, 1506 (6th Cir.1990).
 
 
 17
 The district court adopted the probation department's presentence report and, therefore, applied the specific offense characteristic of Sec. 2K1.4(b)(3) to increase defendant's base offense level by 12 levels. Section 2K1.4(b)(3) requires an increase of 12 levels if "the offense involved destruction or attempted destruction of a residence." In this appeal, defendant argues that the district court erred in applying Sec. 2K1.4(b)(3) because the government did not show by a preponderance of the evidence that defendant attempted to destroy a residence.
 
 
 18
 Defendant asserts that he did not intend to destroy the Rogerses' vacant house and that the Rogerses' vacant house was not a "residence." In support of these contentions, defendant points to his placement of the bomb in the driveway, as opposed to his placing it inside the house, and to his lack of knowledge about the destructive capability of the bomb. Defendant argues that the bomb he used was only a "smoke bomb," which he intended would annoy the Rogerses by creating a nuisance to the house through smoke and noise damage but would not destroy the property. In his objections to the presentence report, defendant objected to the report's characterization of the smoke bomb as a "destructive device." Defendant also argues that Sec. 2K1.4(b)(3) is inapplicable because the targeted structure, the Rogerses' house, was a vacant house and, therefore, not a "residence."
 
 
 19
 From the transcript of the sentencing hearing and the presentence report, it is unclear why the district court applied U.S.S.G. Sec. 2K1.4(b)(3) in sentencing defendant. There is no finding that a residence was "destroyed." Nor is there a finding that defendant acted with the intent necessary for "attempted destruction." The district court did not make any finding from which we can determine if the probation department's characterization of the smoke bomb as a "destructive device" was correct. Furthermore, the district court did not address defendant's argument about the targeted structure not being a "residence." Because the district court did not make adequate findings, we are unable to complete our statutory duty of review. See United States v. Watkins, 92-5830, slip op. at 1-2, 7 (6th Cir. June 1, 1993).
 
 III.
 
 20
 For the reasons stated, we VACATE the sentence and REMAND this case for resentencing consistent with this opinion.
 
 
 
 [1]
 Housey was convicted of possession of an unregistered explosive device and sentenced, on November 18, 1991, to six months in prison followed by three years supervised release. The district court calculated Housey's offense level under sentencing guideline Sec. 2K2.2 without cross-reference, deducted two levels for acceptance of responsibility, and deducted two more levels for minor role in offense
 
 
 [2]
 The probation department used the sentencing guidelines in effect on the date of the offense, October 31, 1989, because they were more advantageous to the defendant than those in effect at the time of the sentencing. 18 U.S.C. Sec. 3553(a)(4) requires a sentencing judge to use the guidelines in effect on the day of sentencing, but sentencing guideline Sec. 1B1.11 requires the court to use the guidelines in effect on the date of the offense if application of the guidelines in effect on the date of the sentence would violate the Ex Post Facto Clause of the United States Constitution. The government accepts that the probation department applied the correct guidelines
 
 
 [3]
 Sec. 2K2.2. Receipt, Possession, or Transportation of Firearms and Other
 Weapon in Violation of National Firearms Act
 (a) Base Offense Level: 12
 (b) Specific Offense Characteristics
 (1) If the firearm was stolen or had an altered or obliterated serial number, increase by 1 level.
 (2) If the firearm was a silencer, increase by 4 levels.
 (3) If the defendant obtained or possessed the firearm solely for sport, recreation or collection, decrease by 6 levels.
 (c) Cross Reference
 (1) If the defendant used the firearm in committing or attempting another offense, apply the guideline for such other offense or Sec. 2X1.1 (Attempt or Conspiracy), if the resulting offense level is higher than that determined above.
 
 
 [4]
 Sec. 2K1.4. Arson; Property Damage by Use of Explosives
 (a) Base Offense Level: 6
 (b) Specific Offense Characteristics
 If any of the following applies, use the greatest:
 (1) If the defendant knowingly created a substantial risk of death or serious bodily injury, increase by 18 levels.
 (2) If the defendant recklessly endangered the safety of another, increase by 14 levels.
 (3) If the offense involved destruction or attempted destruction of a residence, increase by 12 levels.
 (4) If the defendant used fire or an explosive to commit another offense that is a felony under federal law, or carried explosives during the commission of any offense that is a felony under federal law (i.e., the defendant is convicted under 18 U.S.C. Sec. 844(h)), increase by 7 levels.
 (5) If the defendant endangered the safety of another person, increase by 4 levels.
 (6) If a destructive device was used, increase by 2 levels.
 (c) Cross References
 (1) If the defendant caused death, or intended to cause bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is higher than that determined above.
 (2) Apply Sec. 2B1.3 (Property Damage or Destruction) if the resulting offense level is higher than that determined above.
 (d) Note
 (1) The specific offense characteristic in subsection (b)(4) applies only in the case of an offense committed prior to November 18, 1988.